**PURDUE RESEARCH FOUNDATION**

v.

**WATSON, Commissioner of Patents.**

No. 11892.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1954.

Decided March 4, 1954.

Mr. John A. Dienner, Washington, D. C., with whom Mr. Harold T. Stowell, Washington, D. C., was on the brief, for appellant.

Mr. Clarence W. Moore, United States Patent Office, with whom Mr. E. L. Reyn-olds, Solicitor, United States Patent Office, was on the brief, for appellee.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Appellant Purdue Research Foundation is assignee of an applicant for a patent. The Patent Office rejected the application, whereupon suit was filed in the District Court under Rev.Stat. § 4915, as amended, 35 U.S.C. § 63.[1] From judgment dismissing the complaint this appeal comes to us.

In its findings of fact and conclusions of law the court indicated its view that the application was inadequate and defective as a disclosure, and that the claims were functional in seeking to define the invention by a statement of purpose, desired result, or mode of operation, rather than the means for achieving the desired end. The court stated that a broad claim couched in functional terms would extend the patent monopoly beyond the invention. We think this conclusion is correct.

The invention is described as an electrical device used as a crystal rectifier comprising

" * * * a body of semi-conducting germanium of a purity in excess of 99%, a contact element establishing electrical contact with one surface area of the body, and a metallic conductor in electrical conductive contact with a point on a surface of said body * * *."

Appellant claims that its assignor discovered that as germanium is purified to a degree between 99% and 100%, with a correspondingly small amount of natural impurities remaining, it exhibits remarkable properties, theretofore unknown, as a crystal rectifier. It will stand the flow of large amounts of current in the forward direction, and afford a high resistance to current flow in the reverse direction, without burning out in use. We assume these claims to be true. The ap-

---

1. Rev.Stat. § 4915 was repealed in 1952 after this suit was commenced. 66 Stat. 815. It has been replaced by 66 Stat. 803, 35 U.S.C.A. §§ 145, 146 (Supp.1953).

plication is fatally defective, however, in not disclosing what the impurities are except to describe them as "ionized impurities" of minute quantity. Not all impurities bring about the desired result, and the absence of a description of those which do causes the application to fall short of the statutory requirement that the applicant shall point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery, rather than describe it in terms of results achieved. Rev.Stat. § 4888, as amended, 35 U.S.C. § 33.[2] To issue the patent would have the effect of granting a monopoly of crystal rectifiers made of germanium between 99% and 100% pure exhibiting the properties claimed in the application. The case is governed by those which withhold patents sought merely on the basis of results rather than on the structure producing the results. See General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 370–371, 58 S.Ct. 899, 82 L.Ed. 1402; United Carbon Co. v. Binney Co., 317 U. S. 228, 63 S.Ct. 165, 87 L.Ed. 232.

Affirmed.

2. Replaced by 66 Stat. 798, 35 U.S.C.A. § 112 (Supp.1953).